# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| PREFERRED DISPLAY, INC.,<br>  Plaintiff,<br><br>  v.<br><br>GREAT AMERICAN INSURANCE<br>COMPANY OF NEW YORK,<br>  Defendant. | No. 3:16-cv-1559 (SRU) |

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

This case arises out of an insurance coverage dispute between Preferred Display, Inc. ("PDI"), and Great American Insurance Company of New York ("Great American"). The loss at issue resulted from a fire at PDI's premises, and Great American acknowledges that there is coverage for that loss. The parties' disagreement revolves around the amount payable for the loss pursuant to the terms of the Great American policy.

The principal issue raised by this case is whether the "Other Insurance" and "Coinsurance" clauses of the Great American policy operate in combination to cumulatively reduce the amount payable to PDI. At my suggestion, the parties filed cross-motions for summary judgment addressing that issue. Great American also seeks dismissal of various claims in PDI's complaint for failure to state a claim.

For the reasons set forth below, I grant summary judgment in favor of PDI on the declaratory judgment and breach of contract claims (Counts One and Two) and deny in substantial part Great American's cross-motion for summary judgment, a portion of which I treat as a motion to dismiss certain of the causes of action in PDI's complaint.

**I. Standard of Review**

   A. Summary Judgment

Summary judgment is appropriate when the record demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

When ruling on a summary judgment motion, the court must construe the facts of record in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson*, 477 U.S. at 255; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970); *see also Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party").

In the context of cross-motions for summary judgment, the same standard is applied. *See Scholastic, Inc. v. Harris*, 259 F.3d 73, 81 (2d Cir. 2001). However, in deciding each motion, the court must construe the evidence in the light most favorable to the non-moving party. *Id.*

   B. Motion to Dismiss

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is designed "merely to assess the legal feasibility of a complaint, not to assay the weight of evidence which might be offered in support thereof". *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).

When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and decide whether it is plausible that the plaintiff has a valid claim for relief. *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level", and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face". 550 U.S. at 555, 570; *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action". *Twombly*, 550 U.S. at 555 (quotation marks omitted). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and . . . recovery is very remote and unlikely." *Id.* at 556 (quotation marks omitted).

## II. Background

In or about 2015, Great American issued its Select Business Policy (the "Policy") to PDI. At the relevant point in time, the Policy provided up to $4,000,000 in coverage for damage to business personal property in PDI's possession at 32 Roaring Brook Plaza, East Glasonbury, Connecticut (the "Property"). PDI also purchased $2,000,000 of similar insurance from The Hartford Insurance Company.

On or about November 11, 2015, during the coverage period of both policies, a fire caused damage to and destruction of PDI's business personal property located at the Property. For the purposes of this motion, the parties agree that the value of the covered property at the time of the loss was $7,907,217, and the actual cash value ("ACV") of the loss to PDI's covered property was $6,392,119. Def.'s Local Rule 56(a)1 Stmt. at ¶¶ 14-15 (doc. # 56-16); Pl.'s Local

3

Rule 56(a)2 Stmt. at ¶¶ 14-15 (doc. # 58-1). Great American has taken the position that, under the terms of the Policy, it owes PDI substantially less than the $4,000,000 coverage limit of the Policy.

Great American's coverage position relies on two policy provisions, namely the "Other Insurance" and "Coinsurance" clauses. The Other Insurance clause provides:

> **G. Other Insurance**
>
> 1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Coverage Part. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis.
>
> 2. If there is other insurance covering the same loss or damage, other than that described in **1.** above, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance or more than the actual amount of loss or damage.

Policy, Select Business Policy Conditions, Form SB 86 01 (Ed. 07 02) XS at 1 (doc. # 56-5).

The Coinsurance clause provides:

> **A. Coinsurance**
>
> 1. If a Coinsurance percentage is shown in the Declarations for Building, Personal Property or Personal Property of Others, the following condition applies:
>
>    **a.** We will not pay the full amount of any loss if the value of Covered Property at the time of loss times the Coinsurance percentage shown for it in the Declarations is greater than the Limit of Insurance for the property.
>
>    Instead, we will determine the most we will pay using the following steps:
>
>    **(1)**  multiply the value of Covered Property at the time of the loss by the Coinsurance percentage;
>
>    **(2)**  divide the Limit of Insurance of the property by the figure determined in Step **(1)**;

4

> **(3)** multiply the total amount of loss, before the application of any deductible, by the figure determined in Step **(2)**; and
>
> **(4)** subtract the deductible from the figure determined in Step **(3)**.
>
> The most we will pay is the amount determined in Step **(4)** or the Limit of Insurance, whichever is less. For the remainder, you will either have to rely on other insurance or absorb the loss yourself.

Policy, Select Business Policy – Coinsurance, Form SB 87 23 (Ed. 07/02) XS at 1 (doc. # 56-5). The Declarations for Personal Property provided a coinsurance percentage of 80 percent. Policy, Select Business Policy; Schedule of Additional Property Locations, Form SB 81 18 (Ed. 10 10) at 1 (doc. # 56-5).

It is Great American's position that the Other Insurance and Coinsurance clauses operate together to reduce Great American's liability to $2,680,250.23. It is PDI's position that it is entitled to the $4,000,000 limit of liability.

PDI filed this case to resolve the coverage dispute. In addition to bringing a declaratory judgment claim and breach of contract claim with respect to the amount of insurance proceeds payable under the Policy, PDI brings a claim for breach of the covenant of good faith and fair dealing, and a claim for violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), based on an alleged violation of the Connecticut Unfair Insurance Practices Act ("CUIPA").

### III. Discussion

Under Connecticut law, "the terms of an insurance policy are to be construed according to the general rules of contract construction." *Liberty Mut. Ins. Co. v. Lone Star Indus., Inc.*, 290 Conn. 767, 795 (2009) (quoting *Allstate Ins. Co. v. Barron*, 269 Conn. 394, 406 (2004)). "The determinative question is the intent of the parties, that is, what coverage the insured expected to receive and what the insurer was to provide, as disclosed by the provisions of the policy." *Id.* (internal alterations omitted). If unambiguous, the language of the policy "must be accorded its

natural and ordinary meaning". *Id.* at 796. If, however, the policy language is ambiguous—that is, "susceptible of two equally reasonable interpretations"—such language must be construed in favor of the insured, and the interpretation that "sustains the claim and covers the loss" must be adopted. *Id.* (internal alterations omitted).

A. <u>The Other Insurance Clause</u>

"Other insurance" clauses commonly appear in insurance policies. The purpose of such clauses is to "preclude payment of a disproportionate amount of a loss shared with another insurer", 15 Steven Plitt, et al., COUCH ON INSURANCE § 219:1 (3d ed. 2017) ("COUCH"). Connecticut recognizes that other insurance clauses "are valid for the purpose of establishing the order of coverage between insurers, as long as their enforcement does not compromise coverage for the insured". *Aetna Cas. & Sur. Co. v. CNA Ins. Co.*, 221 Conn. 779, 783 (1992). As the Connecticut Supreme Court has acknowledged in the context of underinsured motorist coverage, there are three basic types of other insurance clauses: excess, pro rata, and escape.

> An "excess insurance" clause . . . provides that, if there is other valid insurance covering the loss, the excess policy applies only if the claimant's loss exceeds the policy limits of the primary insurer. A "pro rata" other insurance clause provides that if there is other valid coverage, the insurer is liable only for its pro rata share of the loss, that is, the proportion that its policy limits bears to the total applicable policy limits. An "escape" other insurance clause provides that the existence of other . . . coverage eliminates the insurer's liability to the claimant of that other insurance.

*Id.* at 784 n.3 (citations omitted). *See also* 15 COUCH § 219:5.

Pro rata other insurance clauses are triggered only when the total amount of covered loss is less than the total amount of all available insurances; in those circumstances, an other insurance clause prevents one insurer from paying more than its fair share of overlapping coverage. When the loss exceeds the total coverage, however, a pro rata other insurance clause has no effect. 15 COUCH § 219:31 ("[C]ases may arise where the loss exceeds the total of all insurances, in which instance the proration clause does not become effective and each insurer is

6

required to pay the maximum amount of its policy."); *see also Aetna*, 221 Conn. at 783 ("[T]he original reason for 'other insurance' clauses was to prevent overinsurance and double recovery . . . ."). Excess other insurance clauses are triggered when a comparison of other insurance clauses in the multiple policies results in one policy paying only after another policy has been exhausted. *O'Brien v. U.S. Fidelity and Guar. Co.*, 235 Conn. 837, 842 (1996). An excess other insurance clause will thus have no effect "where the loss exceeds the combined limits of liability of both policies", 15 COUCH § 219:33. On the other hand, where the total available insurance is more than the amount of the covered loss, an excess other insurance clause can result in the excess insurer paying less than its policy limits, because it will pay only after the primary policy is exhausted. *See, e.g.*, *Aetna*, 221 Conn. at 782, 788 (reinstating arbitration decision requiring excess insurer to pay $100,000 out of a $600,000 policy limit where $300,000 primary insurance had been exhausted by a $400,000 loss).

The Policy's Other Insurance provision contains both a pro rata clause and a contingent excess clause. In subpart 1, the Other Insurance clause provides that, if PDI has other insurance of the same type as that provided by the Policy, then Great American "will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Coverage Part bears to the Limits of Insurance of all insurance covering on the same basis." Policy, Select Business Policy Conditions, Form SB 86 01 (Ed. 07/02) XS at 1 (doc. # 56-5). In subpart 2, the Other Insurance clause provides that if the insured has insurance covering the loss on a different basis than the Policy, then the Policy becomes excess to that other insurance: "[W]e will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance." *Id.*

7

I need not decide whether The Hartford's insurance coverage was provided on the same terms as Great American's, and thus whether the pro rata clause or the excess clause of the Policy applies. Because the amount of the loss ($6.39 million) exceeds the total insurance available from all insurers ($6 million), neither of the other insurance provisions in the Policy can operate to reduce Great American's liability to PDI below the Policy's coverage limit of $4 million. Put differently, because Great American's pro rata share of liability is calculated by the proportion its coverage limit bears to the total combined coverage limits of both policies, and because the total loss exceeds the total combined coverage limits, Great American's actual pro rata share must be higher than its coverage limit, and its liability will default down to its coverage limit. For the same reason, the amount Great American must pay PDI is not reduced even if The Hartford is required by the Policy's excess other insurance clause to pay its policy limits before Great American begins to pay: Because the loss is more than the combined policy limits of both policies, first fully subtracting The Hartford's policy limit from the amount of the loss will still leave more loss than Great American's policy limit. The order of payment in this case is therefore inconsequential and each insurer is liable for the full amount due under its policy. The example cited in COUCH to demonstrate the effect of the loss exceeding the available insurance resembles this case: "[W]here the amount of a fire loss exceeded the total amount recoverable under two fire policies, the insured could recover the full amount of the policy from each insurer", notwithstanding an other insurance clause in one of the policies. 15 COUCH § 219:31 (citation omitted).

Great American's argument that the Other Insurance clause can somehow, in tandem with the Coinsurance clause or otherwise, reduce the amount it owes PDI in this case is simply wrong. As COUCH notes, other insurance clauses "govern the relationship between insurers, they

do not affect the right of the insured to recover under each concurrent policy." *Id.* at § 219:1 (citations omitted). Because this is not a case of potential double recovery by the insured, the Other Insurance clause has no impact on the amount owed by Great American under the Policy.

    B. <u>The Coinsurance Clause</u>

The term "coinsurance" means "a relative division of the risk between the insurer and the insured". 15 COUCH § 220.3. "Coinsurance clauses are provisions in insurance policies that require the insured to maintain coverage to a specified value of the property, and stipulate that, upon his or her failure to do so, he or she becomes a coinsurer and must bear his or her proportional part of the loss." *Id.* In effect, a coinsurance clause exacts a "penalty" reduction in the insurance proceeds payable to an insured that has underinsured its property.

The Coinsurance clause in the Policy does operate to leave a large amount of total loss as PDI's responsibility, for which PDI must "rely on other insurance or absorb the loss [it]self". Policy, Select Business Policy – Coinsurance, Form SB 87 23 (Ed. 07/02) XS at 1 (doc. # 56-5). However, because the amount payable by Great American after application of the Coinsurance clause still exceeds the $4 million Limit of Insurance under the Policy, the Coinsurance clause has no practical impact in this case.

The Coinsurance clause potentially limits Great American's exposure in this case because the value of Covered Property at the time of the loss (approx. $7.9 million), multiplied by the 80% Coinsurance percentage shown on the Declarations, results in a sum (approx. $6.3 million) that is greater than the ($4 million) Limit of Insurance for the property. The Coinsurance clause provides, therefore, that Great American will pay the lesser of the result of a calculation set forth in the clause or the $4 million Limit of Insurance.

Specifically, the calculation called for by the Coinsurance clause has four steps:

1. Multiply the value of Covered Property at the time of loss by the Coinsurance percentage:

   $7,907,217 x 80% = $6,325,773.60

2. Divide the Limit of Insurance of the property by the figure determined in Step 1:

   $4,000,000 ÷ $6,325,773.60 = 0.6323

3. Multiply the total amount of loss, before application of any deductible, by the figure determined in Step 2:

   $6,392,119 x 0.6323 = $4,041,736.84

4. Subtract the deductible from the figure determined in Step 3:

   $4,041,736.84 – $25,000 = $4,016,736.84

The result of the Coinsurance clause calculation is thus $4,016,736.84. The Coinsurance clause further provides that "[t]he most we will pay is the amount determined in Step (4) or the Limit of Insurance, whichever is less." Because the $4,000,000 Limit of Insurance is less than $4,016,736.84, a straightforward application of the terms of the Coinsurance clause requires Great American to pay PDI the $4 million Limit of Insurance.

C. Great American's Misguided Interpretation

Great American argues that it owes PDI only $2,680,250.23 under the terms of the Policy. It reaches that facially erroneous result by inventing an additional step for the calculation described in the Coinsurance clause: reduction of the amount payable to PDI pursuant to the Coinsurance calculation by an additional one-third, based on the unrelated Other Insurance clause. In short, Great American seeks to rewrite the terms of the Coinsurance clause.

Great American seeks to justify its contractual sleight of hand with two versions of the Coinsurance calculation, both of which employ numbers inappropriately modified by Great American in place of the numbers actually called for by the terms of the clause. In the first version, Great American improperly reduces by one-third the "total amount of loss" figure used

10

in the Step 3 calculation before applying Step 3 to multiply that incorrectly-reduced number by the figure determined in Step 2. *See* Def.'s Br. at 18. In the second version, Great American properly calculates Step 3, but then, rather than heeding Step 4's instruction to use "the figure determined in Step 3", instead reduces the figure determined in Step 3 by one-third and uses that reduced number in the Step 4 calculation. *See* Def.'s Reply Br. at 5 (doc. # 61). Neither of the one-third reductions advocated by Great American is required—or permitted—by the terms of the Coinsurance clause.

Great American ineffectively justifies its distortion of the Coinsurance calculation by arguing that the Policy requires the application of the Other Insurance clause's two-thirds/one-third apportionment as part of the Coinsurance calculation, *without pointing to any language in the Policy that calls for such application*.[1] There are multiple problems with Great American's approach. Most importantly, the Coinsurance calculation does not call for the Other Insurance clause's two-thirds/one-third ratio to be used as an input in Step 3 of the calculation—it calls for the "total amount of loss" to be used in Step 3, before moving directly to Step 4. The policy does not define the phrase "total amount of loss", so it must be given its plain and ordinary meaning. *See Allstate Ins. Co.*, 269 Conn. at 406. Throughout the Policy, the term "loss" refers to the damage or harm suffered by the insured, not to the amount payable to the insured under the coverage afforded by the Policy. *See, e.g.,* Policy, Cap on Losses from Certified Acts of Terrorism, Form IL 09 52 (Ed. 03/08) XS at 1 (doc. # 56-5) ("The terms and limitations of any terrorism exclusion . . . do not serve to create coverage for any loss which would otherwise be

---

[1] Great American does point out that the Coinsurance clause states, in prefatory language, that it applies "in addition to the Common Policy Conditions and the Select Business Conditions", *see* Def.'s Br. at 17 (citing Policy, Select Business Policy – Coinsurance, Form SB 87 23 (Ed. 07/02) XS at 1 (doc. # 56-5)), and the Other Insurance clause is indeed one of the Select Business Conditions. However, that generic language, which merely cautions that the Coinsurance clause does not apply to the exclusion of the Other Insurance clause, does not effect the one-third reduction Great American seeks.

11

excluded . . . ."; Policy, Select Business Policy Condition G.2., Form SB 86 01 (Ed. 07/02) XS at 1 (doc. # 56-5) ("If there is other insurance covering the same loss or damage . . . .").[2] The plain meaning of the phrase "total amount of loss" must therefore be the entirety of PDI's losses, $6,392,119. It is fundamentally improper for Great American to insert an extra reduction, contrary to the plain terms of the Policy, into the Coinsurance clause calculation. If the policy were intended to operate as Great American claims, it was incumbent on Great American to write that reduction into the detailed calculation set forth in the Policy. Because the calculation depends on the "total amount of loss", Great American cannot simply invent a one-third reduction by either modifying the plain meaning of "total amount of loss" or adding an additional step between Steps (3) and (4).[3]

In addition to clashing with the plain meaning of the Coinsurance clause, Great American's approach is also in conflict with the terms and purpose of the Other Insurance clause. As a preliminary matter, other insurance clauses are not intended to be used for the purpose advocated by Great American—other insurance provisions prioritize payouts among insurers, they do not reduce the coverage provided to the insured. *Aetna*, 221 Conn. at 783. In fact, as Great American itself acknowledges, other insurance clauses are only valid under Connecticut law where their enforcement does not reduce the coverage available to the insured. *See* Def.'s Br. at 16 ("[O]ther insurance clauses do not violate public policy if there is no denial or

---

[2] Most striking is the Other Insurance Condition G.1 itself, which states that, where PDI has other insurance, Great American will only "pay [its] share of the covered loss or damage". Form SB 86 01 (Ed. 07/02) XS at 1 (doc. # 56-5). That language shows, first, that the term "loss" is intended to refer to the entirety of PDI's loss, not just that portion of the loss payable to PDI by Great American. It also suggests that even the narrower phrase "covered loss" refers to the entirety of PDI's losses to covered property from covered causes, and does not refer more limitedly to some amount payable by Great American under the Policy.

[3] Following the text of the Coinsurance clause, the Policy lists three examples that are intended to show how the Coinsurance provision applies. Notably absent from any of those examples is any suggestion that the "total amount of loss" should be calculated as Great American's pro rata share of responsibility with another insurer. *See* Policy, Select Business Policy – Coinsurance, Form SB 87 23 (Ed. 07/02) XS at 1-2 (doc. # 56-5).

diminution of coverage."); *Aetna*, 221 Conn. at 783 ("'[O]ther insurance' clauses are valid for the purpose of establishing the order of coverage between insurers, *as long as their enforcement does not compromise coverage for the insured*." (emphasis added)). That limited purpose is consistent with the recognized fact, discussed above, that other insurance clauses have no practical effect in cases like this one, where the total amount of loss exceeds the total amount of insurance, because there is nothing to apportion among multiple insurers—each must pay its full policy limits unless some other provision of the policy calls for a lesser payment.[4] Put differently, if Great American wants to apply the pro rata Other Insurance clause, it must apply its two-thirds responsibility against the total loss; doing so results in Great American being responsible (before consideration of the policy limits) for more than $4 million of the more than $6 million in covered losses. Unsurprisingly, Great American can point to no language in the Other Insurance clause that suggests it should be applied to the Coinsurance calculation rather than the full loss. The plain language of the Policy and the familiar operation of pro rata other insurance clauses thus both require that the pro rata reduction be taken against total losses, not against the amount otherwise payable by Great American to its insured.[5]

---

[4] As implied in Section III.A, *supra*, had the total insurance ($6,000,000) exceeded the total loss, the Other Insurance clause's stipulation that Great American only pay two-thirds of the total loss would apply to reduce Great American's liability to less than the $4,000,000 Policy limit (because two-thirds of an amount less than $6,000,000 is less than $4,000,000). Separately, in such circumstances, the Coinsurance clause would reduce the amount that Great American must pay to PDI even further—but not due to any cumulative interaction between the Other Insurance and Coinsurance clauses. For example, if the loss had been $599,999 (i.e., one dollar less than $600,000), the Other Insurance clause would ensure that Great American would owe no more than $399,999.33 (two-thirds of the total loss) while The Hartford would owe the remaining $199,999.67 (one-third of the total loss). Under those circumstances, application of the *unrelated* Coinsurance clause calculation would result in a reduction of more than $45,000 from Great American's payout, because the result from Steps (3) and (4) of the Coinsurance calculation would be $354,379.37 (Step (3): $599,999 x 0.6323 = $379,379.37; Step (4): $379,379.37 – $25,000 = $354,379.37), which is less than the $4,000,000 policy limit, and less than the $399,999 result of the Other Insurance clause, and that lower number would further cap the amount payable to the insured.

[5] The unreasonableness of Great American's position is demonstrated by the fact that, under Great American's approach, PDI is much worse off because it purchased additional insurance from The Hartford. But for that purchase, Great American would have to concede that it owes PDI $4 million, because the Other Insurance clause could not apply to reduce the Coinsurance calculation (there being no other insurance). However, far from leveraging other insurance to penalize PDI and diminish Great American's liability, the Coinsurance clause

The only decision cited by Great American in support of its contra-contractual mathematics is *Sun Ins. Office, Ltd. v. Thomas*, 90 S.W.2d 675 (Ky. 1935). That case is inapposite here, however, because the policy language in *Sun Insurance* expressly provided for the cumulative reduction approved in that decision:

> It is made a condition and part of the consideration of this policy, that in the event of loss, this company shall not be liable for an amount greater than three fourths of the actual cash value of the property covered by this policy at the time of such loss and in case of other insurance, whether policies are concurrent or not, then for *only its pro rata proportion of such three fourths value*.

*Id.* at 678 (emphasis added). The Kentucky Supreme Court held that the insurance company was only liable for its pro rata proportion of the three-fourths value because that is exactly what the contract said.[6] *Id.* In other words, the clause in *Sun* that Great American seeks to equate to its Coinsurance clause *specifically called for an additional pro rata reduction of the product of the clause*. *Id.* No such language appears in the Policy.

Great American's interpretation of the Policy is entirely meritless. PDI is entitled to summary judgment on the declaratory judgment and breach of contract claims.[7]

---

specifically anticipates a different role for other insurance—supplementing any shortfall in coverage that results from the Coinsurance calculation: The clause provides that, where the full amount of any loss is not covered after application of the Coinsurance clause, PDI must cover the remainder with "other insurance or absorb the loss [it]self". Select Business Policy – Coinsurance, Form SB 87 23 (Ed. 07/02) XS at 1-2 (doc. # 56-5). Great American's interpretation of the Policy would perversely encourage PDI to purchase other insurance to fill in any shortfall in Great American's coverage, and then utilize that additional other insurance to further reduce Great American's liability to PDI.

[6] It is unfortunate that a leading insurance treatise has suggested the *Sun Insurance* decision stands for a broad proposition that is not supported by modern policy language and case law. COUCH suggests, incorrectly in my view (and inconsistently with statements made elsewhere in the treatise), that: "Where a policy sets forth the insurer's maximum liability in terms of a percentage of the value of the property destroyed and also has a pro rata 'other insurance' clause, the percentage liability of the insurer is further reduced." 15 COUCH § 220:20. That result was dictated by the unusual language in the *Sun Insurance* policy, and will not generally be true. Indeed, the *Sun Insurance* decision itself implicitly recognizes that, in the absence of express policy language providing otherwise, when the loss exceeds the total amount of insurance, a pro rata clause is rendered inapplicable. 90 S.W.2d at 679.

[7] Even if any of Great American's arguments were convincing, they would, at most, suggest some ambiguity concerning the intended interpretation of the Policy. Such ambiguity would have to be resolved in favor of PDI, the insured. *Liberty*, 290 Conn. at 796.

14

D. The Remaining Claims

Great American seeks the dismissal of Counts Three (bad faith) and Four (CUTPA/CUIPA). Because I expressly stayed discovery on matters not pertaining to the construction of the Other Insurance and Coinsurance provisions of the Policy, I will consider Great American's contentions as having been raised in a motion to dismiss.

1. *Bad Faith*

PDI's bad faith claims, outlined in the Amended Complaint at paragraph 49, can be broken into two categories. The first category represents allegations relating to what PDI believes to be an unfair or unreasonable interpretation of the Policy. The second category of PDI's bad faith claims concern what it perceives to be Great American's improper methods of adjusting the claim. *See* Am. Compl. at ¶¶ 49(b)-(d), (g), and (h).

Connecticut law implies a duty of good faith and fair dealing as a covenant into every contractual relationship. *De La Concha of Hartford, Inc. v. Aetna Life Ins. Co.*, 269 Conn. 424, 432 (2004). Connecticut courts use the terms "bad faith", "lack of good faith", and "breach of the covenant of good faith and fair dealing" interchangeably, and accordingly apply the same standards for each type of claim. *Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 794 n.34 (2013). In order to prevail on a bad faith claim, the plaintiff must show "actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive". *De La Concha*, 269 Conn. at 433. A plaintiff may not bring a bad faith claim when an insurer denies benefits based on a "fairly debatable" interpretation of the policy language. *See McCulloch v. Hartford Life & Acc. Ins. Co.*, 363 F. Supp. 2d 169, 177 (D. Conn. 2005). Rather, the plaintiff must show "a dishonest purpose". *De La Concha*, 269 Conn. at 433.

15

With respect to PDI's first category of bad faith claims, as is evident from my discussion above, Great American's interpretation of the Policy is neither reasonable nor fairly debatable. Still, it remains to be seen whether PDI can develop evidence sufficient to show that Great American acted with a dishonest purpose. That determination must await discovery and another round of summary judgment motions. At this point, however, it is clear that PDI has adequately alleged its first bad faith claim, so I will not dismiss it on the pleadings.

In the second category of PDI's bad faith claims, PDI alleges that Great American (1) applied an unduly and unreasonably high rate of depreciation for the damaged property; (2) failed to timely issue payment of withheld depreciation within a reasonable time after receiving documentation of replacement of those items; (3) failed to timely respond to PDI's correspondence; (4) requested unnecessary, irrelevant, and/or duplicative information in an effort to delay adjustment of the claim; and (5) took the unreasonable and unsupported position that the damaged business personal property could be repaired and/or restored despite clear and uncontroverted evidence to the contrary.

An essential element of a bad faith claim is that the insurer performed some action, in bad faith, to "injure the right of [the insured] to receive the benefits of the agreement". *Capstone Bldg.*, 308 Conn. at 795 (quoting *Aetna*, 235 Conn. at 200) (internal quotation marks omitted); *see also Royal Indem. Co. v. King*, 532 F. Supp. 2d 404, 414 (D. Conn. 2008), *aff'd sub nom. Arrowood Indem. Co. v. King*, 699 F.3d 735 (2d Cir. 2012) (plaintiff must show that "injurious actions were the product of the defendant's bad faith"). As one court has recently recognized, there is no independent bad faith claim arising out of an allegation of "procedural bad faith". *Tucker v. Am. Int'l Grp., Inc.*, 2015 WL 403195, at *28 (D. Conn. Jan. 28, 2015) (citing *Capstone Bldg.*, 308 Conn. at 793-803).

16

In the instant case, the parties agree that Great American has already paid PDI approximately $2,975,000 of its $4,000,000 policy limit. Pl.'s Local Rule 56(a)1 Stmt. at ¶ 6. The remaining $1,025,000 is being withheld by Great American as a result of the dispute regarding the application of the Other Insurance and Coinsurance provisions. PDI does not allege any facts to support a theory that PDI has been denied any benefit under the policy separate and apart from their dispute over the application of those provisions. For example, one of PDI's allegations is that Great American failed to reimburse PDI for a security service that was retained shortly after the loss at Great American's insistence. Another is that Great American improperly disregarded PDI's expert's opinion regarding the ability to restore the damaged property. Those allegations are irrelevant to whether Great American has denied a benefit under the policy (namely, the approximately $1.025 million) in bad faith because Great American's denial of that benefit is based solely on its interpretation of the Coinsurance and Other Insurance provisions. Moreover, because the loss significantly exceeded the coverage here, it does not appear that the disputes regarding the claim handling could have any material impact on the amount due to PDI. Accordingly, the remaining allegations regarding Great American's claim settlement practices do not state an independent bad faith claim and that portion of the bad faith count is dismissed.

2. *CUTPA/CUIPA*

PDI's CUTPA/CUIPA claim rests on the allegation that Great American has violated CUIPA with sufficient frequency to constitute a general business practice. *See* Am. Compl. at ¶ 73. In support of its allegation, PDI references five cases other than its own in which Great American allegedly committed unfair insurance practices.

A plaintiff may allege a CUTPA violation on account of an alleged violation of CUIPA. *Mead v. Burns*, 199 Conn. 651, 663 (1986). Claim settlement practices violate CUIPA if they

are "[c]ommitt[ed] or perform[ed] with such frequency as to indicate a general business practice". Conn. Gen. Stat. § 38a-816(6). To allege a violation of CUIPA, "[t]he plaintiff must show more than a single act of insurance misconduct; isolated instances of unfair settlement practices are not sufficient to establish a claim." *Karas v. Liberty Ins. Corp.*, 33 F. Supp. 3d 110, 117 (D. Conn. 2014).

To determine whether instances of insurance misconduct spanning different cases and different parties are sufficiently related to constitute a "general business practice", courts faced with a motion to dismiss have considered the following factors:

> [T]he degree of similarity between the alleged unfair practices in other instances and the practice allegedly harming the plaintiff; the degree of similarity between the insurance policy held by the plaintiff and the policies held by other alleged victims of the defendant's practices; the degree of similarity between claims made under the plaintiff's policy and those made by other alleged victims under their respective policies; and the degree to which the defendant is related to other entities engaging in similar practices.

*Belz v. Peerless Ins. Co.*, 46 F. Supp. 3d 157, 166 (D. Conn. 2014).

As Great American's moving papers point out, the coverage disputes in the cases listed in the Amended Complaint do not resemble the allegations in this case. *See* Def.'s Br. at 25-27. In response, rather than attempting to engage with any of Great American's claims regarding the dissimilarities of the cases, PDI argues that additional discovery will produce evidence that Great American has engaged in the same or similar conduct in those cases as it did in the handling of PDI's claim. *See* Pl.'s Opp'n at 15-16. PDI may not rely on what additional discovery might uncover when faced with a motion to dismiss brought under Rule 12(b)(6). *See Belz*, 46 F. Supp. 3d at 166.

PDI has shown that it is entitled to additional recovery based on a faulty interpretation of the Policy, and has alleged that Great American engaged in some delay tactics or improper

18

adjusting methods during the course of the handling of the claim. The dissimilarity between this case and PDI's cited cases makes it implausible that the complained-of conduct in this case has been committed with sufficient frequency to constitute a general business practice.[8] Because PDI may be able to amend the complaint to plead a sufficient CUTPA claim, however, PDI's CUTPA claim is dismissed without prejudice to filing an amended complaint within thirty days.

## IV. Conclusion

For the foregoing reasons, and treating PDI's motion for partial summary judgment (doc. # 53) as a motion for summary judgment on Counts One and Two of the Amended Complaint, PDI's motion is granted; Great American's motion for summary judgment (doc. # 56) is granted in part and denied in part. Great American's motion is granted to the extent that it seeks dismissal of PDI's bad faith claim based on claim handling and PDI's CUTPA/CUIPA claims, and is denied in all other respects.

Although the parties only agreed to the facts regarding the estimated loss amount for the purposes of this motion, it appears that there are no facts that would warrant a judgment in favor of PDI on the breach of contract claim for any amount other than the balance of Great American's $4,000,000 limit of liability. Because Great American has already issued $2,975,238.61 in partial payments, *see* Pl.'s Local Rule 56(a)1 Stmt. at ¶ 6, it appears that judgment should enter in favor of PDI in the amount of $1,024,761.39 plus prejudgment interest on Count Two. If either party wishes to challenge that amount, it must file a notice of an intent to do so within fourteen (14) days of this ruling. Absent timely filing of such notice, the court will enter judgment in the amount of $1,024,761.39 plus prejudgment interest in favor of PDI as well as a declaration that it is entitled to that sum under the terms of the Policy.

---

[8] I may take judicial notice of court documents. *Rothman v. Gregor*, 220 F.3d 81, 92 (2d Cir. 2000).

The parties shall meet and confer regarding appropriate deadlines for completion of discovery and filing of dispositive motions addressing the remaining claims. Within fourteen days of this ruling, they shall file a proposed scheduling order.

So ordered.

Dated at Bridgeport, Connecticut, this 18th day of January 2018.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge